PROB12C (9/14)

# UNITED STATES DISTRICT COURT
## FOR THE
## WESTERN DISTRICT OF WISCONSIN
### PETITION FOR WARRANT FILED AS A DETAINER FOR OFFENDER UNDER SUPERVISION

**Name of Offender:** Raequon Dewrell Allen  
Dane County, Wisconsin, Jail  
(Primary State Custody)

**Case Number:** 15-cr-67-wmc-1

**Name of Sentencing Judicial Officer:** Honorable William M. Conley

**Date of Original Sentence:** June 30, 2016
**Date of Amended Sentence:** November 28, 2017

**Offense:** Count 3: Interference with Commerce by Threats or Violence (Hobbs Act Robbery), in violation of 18 U.S.C. § 1951, a Class C Felony; Count 4: Brandishing a Firearm During and in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c), a Class A felony

**Original Sentence:** 36 months' imprisonment on Count 3, consecutive to 84 months' imprisonment on Count 4; to be followed by a 3-year term of supervised release, per count, to run concurrently.
**Amended Sentence:** 24 months' imprisonment on Count 3, consecutive to 84 months' imprisonment on Count 4; to be followed by a 3-year term of supervised release, per count, to run concurrently.

**Type of Supervision:** Supervised release

**Date Supervision Commenced:** May 20, 2024

**Assistant U.S. Attorney:** Laura Przybylinski-Finn

**Defense Attorney:** To be determined
*(Previously Pro Se)*

## PETITIONING THE COURT

☒ To issue a warrant to be filed as a detainer.

The probation officer alleges that Raequon Allen has violated the following conditions of supervision:

| **Violation** | **Nature of Noncompliance** |
|---|---|
| Mandatory Condition: | "Defendant shall not commit another federal, state, or local crime." |
| | "Defendant shall not illegal possess a controlled substance." |
| | "…defendant shall not possess a firearm, destructive device, or other dangerous weapon while on supervised release." |
| | On June 17, 2024, Mr. Allen was arrested by officers with the City of Madison, Wisconsin, Police Department for possession of firearm by felon (felony), |

knowingly flee an officer (felony), operate a vehicle while intoxicated with weapon (misdemeanor), resisting or obstructing (misdemeanor), and possession of cocaine (misdemeanor). The undersigned officer spoke with a lieutenant from the Madison Police Department who provided a summary of this incident. Officers observed Mr. Allen driving a vehicle and were aware he was wanted by the Middleton, Wisconsin, Police Department (see below). Officers were also aware of Mr. Allen's violent and uncooperative history; therefore, prior to attempting to initiate a traffic stop on Mr. Allen's vehicle, officers notified other law enforcement departments to prepare and assist. Stop spikes were set up around Mr. Allen's vehicle; however, Mr. Allen did not cooperate with the traffic stop and drove over the stop spikes causing his vehicle's tires to deflate. Mr. Allen continued to attempt to flee from officers and drove until he crashed into another occupied vehicle (no one was reportedly injured). Leslie Haynes was the lone passenger in Mr. Allen's vehicle. Mr. Allen was observed scrambling inside the vehicle and attempting to eat the cocaine that was inside. Mr. Allen then got onto the roof of the vehicle and began screaming at the officers. Officers hit Mr. Allen with non-lethal 40-millimeter ammunition, and he was taken into custody. A firearm reported stolen by the Milwaukee, Wisconsin, Police Department and cocaine were discovered inside the vehicle. Mr. Allen was uncooperative with officers while he was transported to the hospital for medical clearance prior to being taken to the Dane County, Wisconsin, Jail. The undersigned officer spoke with jail staff who advised that Mr. Allen continued to be uncooperative and was taken immediately into segregation. A copy of the police report has been requested.

On June 12, 2024, the undersigned officer was contacted by officers with the Middleton Police Department and was notified of an ongoing investigation that they had probable cause to arrest Mr. Allen on charges of stalking (felony) and disorderly conduct (domestic) involving his children's mother, Katrina Kane. They also had probable cause to arrest him on felony charges for an April 2024 domestic incident that occurred with Ms. Kane.

According to Middleton Police Report 24-007617, on June 12, 2024, officers were dispatched to a daycare in Madison for a report of a verbal domestic incident that began in Middleton. The alleged victim, Katrina Kane, reported that while leaving her apartment in Middleton that morning Mr. Allen, the father of two of her children, stopped her in her apartment complex and began to argue with her. She did not know he would be there and did not know how he had entered the secure building. She asked him to leave, and he proceeded to follow her to the underground parking garage as she got the children into her vehicle. She observed that Mr. Allen had parked in the garage too, as he entered a white Chevrolet vehicle. He proceeded to follow her in his vehicle from her apartment to the children's daycare. Daycare staff assisted in escorting her children into the building upon their arrival. Ms. Kane left the daycare and Mr. Allen proceeded to follow her again. While driving, Ms. Kane observed a Madison police officer and flagged down the officer for help. Ms. Kane and the officer returned to the daycare to talk further. Ms. Kane denied there being a physical altercation that morning, but she feared for her and her children's safety. While the officer was speaking with Ms. Kane, staff at the daycare reported observing Mr. Allen repeatedly driving up and down the roadway near the daycare center. Ms. Kane shared that she was involved in a previous physical domestic altercation with Mr. Allen that she began to report, but she did not follow up on, which made her especially concerned about Mr. Allen's present behavior.

During a June 12, 2024, domestic violence lethality assessment, Ms. Kane described being terrified of Mr. Allen. He has threatened to kill her in the past and believed he may attempt to kill her. He has left threatening messages and calls her from blocked and restricted phone numbers.

On June 17, 2024, a detective with the Middleton Police Department informed the undersigned officer Mr. Allen spoke with a detective via phone on June 13, 2024, and admitted to being involved in a verbal argument with Ms. Kane at her apartment complex on June 12, 2024. At one point, Mr. Allen told the detective he would call back, ended the call, but he did not make contact with their department again. The detective confirmed that he is in contact with the Dane County, Wisconsin, District Attorney's Office and is planning to pursue felony domestic charges from the June 12, 2024, incident, and the April 2024 incident. The undersigned officer is awaiting the supplemental reports for these incidents.

**Standard Condition No. 9:**  "Defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer."

On June 13, 2024, Mr. Allen had phone contact with a detective with the Middelton Police Department regarding the above incident. Mr. Allen failed to notify his supervising officer of his law enforcement contact.

**Standard Condition No. 7:**  "Defendant shall not meet, communicate, or spend time with any persons defendant knows to be engaged in criminal activity or planning to engage in criminal activity."

On June 17, 2024, Mr. Allen was with Leslie E. Haynes, who was the lone passenger in the vehicle he was operating when he attempted to flee from police officers. Mr. Haynes was also arrested that day and has charges of possession of cocaine, resisting and obstructing, and bail jumping-misdemeanor. According to Wisconsin Circuit Court Records, Mr. Haynes was in the community on a signature bond pending battery and disorderly conduct charges in Dane County, Wisconsin, Circuit Court Case No. 2481.

**Special Condition No. 15:**  "Abstain from the use of alcohol."

On June 7, 2024, Mr. Allen submitted a urine sample that tested positive for ethyl glucuronide (EtG), which is a byproduct of ethanol (alcohol). Mr. Allen admitted to consuming alcohol on June 5, 2024.

**Adjustment to Supervision:** Mr. Allen transitioned into the community through the residential reentry center (RRC) at Rock Valley Community Program (RVCP) in Janesville, Wisconsin; he arrived there on September 28, 2023. While at the RRC, Mr. Allen incurred numerous violation incidents including deviating on pass, not communicating with RRC staff while on pass, missing medical appointments, being terminated from work, and failing to stand for count. Staff advised that Mr. Allen had a poor attitude and work ethic. When the undersigned officer met with him at the RCC, he provided limited information when asked to plan for his release, stating some things were not the undersigned officer's business. For example, when asked what support he had in the community, he did not believe this was relevant information for the undersigned officer to know. In December 2023, Mr. Allen received a disciplinary report for escape (deviating from his approved social pass while in the community), which resulted in him being taken into custody at the Rock County, Wisconsin, Jail, where he remained from December 22, 2023, until March 19, 2024. He also received the loss of good conduct time for this incident.

On March 19, 2024, Mr. Allen returned to the RRC, and his behavior reportedly improved. He transitioned to home confinement at his cousin's residence in Madison on April 23, 2024. The undersigned officer met with Mr. Allen while at the RRC and on home confinement to assist with release planning. Mr. Allen expressed interest in connecting with a peer mentor, someone who was able to better relate to him and his experiences. The undersigned officer offered to coordinate calls with the Nehemiah Center for Urban Leadership Development (Nehemiah) and Just Dane, both are community programs that provide reentry services to those who have formerly been incarcerated and specifically offer peer mentorship and support programs. On May 8, 2024, the undersigned officer met with Mr. Allen to facilitate calls to connect Mr. Allen with these programs. Mr. Allen expressed interest in working with both programs and scheduled follow-up meetings with each of them, one which was to occur later that same day and the other the following day.

On May 20, 2024, Mr. Allen's supervised release commenced. The undersigned officer scheduled a meeting with Mr. Allen on May 21, 2024, at his reported and approved release residence in Madison for an intake appointment. On this date, the undersigned officer called to ensure Mr. Allen was at his residence. Mr. Allen denied being home and appeared confused when the undersigned officer questioned him about why he was not at home. He was reminded of their meeting at his residence, and he replied he had other things to do in the community and would call the officer when he was back at his residence. He offered for the undersigned officer to meet him in the community. The undersigned officer advised she would not meet him at a random location in the community for his intake appointment and reminded him they had scheduled to meet at his residence. He stated he used his reported residence address during his home confinement period but would not necessarily be living there full-time. The undersigned officer offered to meet him at his reported residence later that afternoon or for him to report to the probation office the following day. He agreed to meet the undersigned officer at the residence.

During his intake appointment, Mr. Allen mentioned he has dealt with a lot of probation officers, had negative experiences, and commented he will cooperate with what he needs to but will not provide more information than required. The undersigned officer reviewed her role and his court-ordered conditions and expectations while on supervision. It was emphasized that he has control over his adjustment while under supervision and stressed the importance of effective communication and honesty. He noted that he could remain living at his cousin's residence but felt he was invading his cousin's space. When asked about an alternative housing plan, Mr. Allen alluded to couch surfing until he got his own residence. The importance of having a stable residence was discussed, not only for supervision purposes but also to assist in his own success. He acknowledged this, denied being homeless, and stated that his cousin's residence is where he would mainly reside. The undersigned officer instructed him to provide any updates on his residence status and to report a change of address if he moved.

Mr. Allen submitted a urine sample that was negative for all substances, including EtG; however, the presumptive test line was faint. The undersigned officer questioned Mr. Allen about any alcohol use. He reported he occasionally drinks alcohol and last drank a few days earlier. He denied alcohol use being an issue for him. The undersigned officer reiterated that his conditions require him to abstain from alcohol use.

The undersigned officer inquired on his follow-up appointments with Nehemiah and Just Dane. He shared he was unable to connect with the peer mentor at Just Dane, as the mentor was not in the office when he arrived, and he did not have transportation to meet with the individuals at Nehemiah the following day. He denied rescheduling and did not have any plans to work with either program. The undersigned officer encouraged him to reconsider and emphasized that of all people and programs, the people he had spoken with at Nehemiah and Just Dane would understand and be able to relate to his situation and any barriers he is experiencing and make appropriate accommodations to meet and work with him.

On June 3, 2024, the undersigned officer attempted an unscheduled home contact. An unknown individual slightly opened the door, and when asked if Mr. Allen was home, responded "no" and slammed the door shut. The undersigned officer attempted to call Mr. Allen and left a message requesting he call back to schedule a time to

meet that week.

On June 5, 2024, the undersigned officer texted Mr. Allen to contact her that day, as she had not heard from him. Mr. Allen did not call as instructed.

On June 6, 2024, the undersigned officer attempted to call Mr. Allen again and there was no answer; the undersigned officer left a message instructing him to be home the following day to meet.

On June 7, 2024, the undersigned officer conducted a home contact and Mr. Allen was at his reported residence. He denied receiving the undersigned officer's message about the meeting on this day because his phone no longer worked. He was still searching for employment and claimed to be earning cash on the side working on cars at a friend's auto shop. The undersigned officer discussed the importance of gaining legitimate employment with stable hours and income. Mr. Allen still denied being interested in reconnecting with any peer mentorship/ support or reentry services community programs. He shared he was having issues with Ms. Kane because she would not let him have contact with his children; he mentioned wanting to bring the matter to court. Mr. Allen submitted a urine sample for drug testing, and the results were positive for EtG, indicating alcohol use. Initially, Mr. Allen denied alcohol use, but he eventually admitted he consumed alcohol a couple of days earlier. He was vague about his use, stating he took one sip from someone else's alcoholic drink while at dinner. The undersigned officer verbally reprimanded him and reminded him he is to abstain from alcohol use while on supervision. The undersigned officer asked Mr. Allen if he anticipates this being an ongoing problem and offered to connect him with treatment resources. He denied needing treatment at this time and denied alcohol ever being problematic for him. He commented it was his "constitutional right, " and for "religious" reasons, he had a right to drink alcohol. The undersigned officer reiterated his court-ordered conditions and reminded him that this condition was imposed due to his self-reported history of alcohol abuse and being under the influence of alcohol while committing past offenses. He minimized this and claimed he was under the influence of other drugs and alcohol at the time of some of his offenses; alcohol was never the issue; it was the other drugs. The undersigned officer reiterated his condition and expectation of sobriety and warned him that ongoing use would likely result in further violations and consequences. The undersigned officer attempted to teach and practice a cognition intervention skill with him, but he was not receptive to it and claimed he was not in need of this cognitive tool.

On June 12, 2024, police officers with the Middleton Police Department informed the undersigned officer that in addition to the stalking charge, they also had probable cause to arrest Mr. Allen on charges of strangulation and suffocation (felony), false imprisonment (felony), intimidate victim/ act of domestic abuse (felony), and disorderly contact from a domestic incident that occurred with Ms. Kane in April 2024. After searching dispatch records, an initial call from Ms. Kane was observed on April 22, 2024. She reported to dispatchers that Mr. Allen had strangled her. According to Middleton Police Report 24-007617, officers interviewed Ms. Kane on June 12, 2024, regarding the April 2024 domestic incident. On April 20, 2024, Mr. Allen reportedly came to Ms. Kane's residence without permission, and they began arguing about Mr. Allen's visitation with the children. Ms. Kane attempted to call the police, but Mr. Allen took the phone out of her hand and threw it. The incident escalated when Mr. Allen began to strangle Ms. Kane. She attempted to run out of the apartment multiple times to get help, but Mr. Allen pulled her back inside and continued to strangle her to the point of unconsciousness. She woke up to Mr. Allen and her children near her; Mr. Allen left without further incident. She reported having injuries from this incident consistent with strangulation but did not seek medical care. Three of her children were inside the apartment at the time and witnessed this incident. She took photos of the bruising and told a friend. Following this incident, Ms. Kane got a dog and a camera for her apartment because she feared for her life. *(In April 2024, Mr. Allen's supervised released period had not yet commenced, and he was still under the authority of the Bureau of Prisons).*

**Probation Officer's Recommendation:** It is respectfully recommended that a warrant be issued and filed as a detainer due to the severity of Mr. Allen's alleged new criminal conduct, which includes possession of a firearm; possession of an illegal controlled substance; threatening and presenting a risk of danger to the alleged victim; his criminal history ,which includes violent behavior while possessing a firearm; and the need to protect the alleged

victim and the community. Mr. Allen's instant offense involves violent acts with the use of a firearm, and he has an extensive history involving numerous incidents of causing physical harm to others. Additionally, Mr. Allen threatening Ms. Kane is not new behavior. In Mr. Allen's presentence report, investigative materials reflect that when he was incarcerated at the Dane County Jail pending sentencing, Mr. Allen could be heard threatening to harm Ms. Kane during some phone calls with her. Mr. Allen's supervised release commenced less than 30 days ago, and he has allegedly engaged in new violent and threatening behavior. Mr. Allen's alleged violations are very concerning and pose a direct risk of harm to the alleged victim in his new state cases and the community as a whole. His frightful behavior reflects that he is not willing or able to follow his court-ordered conditions.

Assistant U.S. Attorney Laura Przybylinski-Finn has been notified of this filing.

**Penalties:** Pursuant to 18 U.S.C. § 3583(e)(3), if the term of supervised release is revoked, the statutory maximum term of imprisonment is 5 years because Count 4 of his original offense of conviction is a Class A felony, and 2 years because Count 3 of his original offense of conviction is a Class C felony. It is noted that revocation is mandatory under 18 U.S.C. § 3583(g)(2) if the Court were to find that Mr. Allen possessed a firearm during his term of supervision.

The most serious alleged violation in this case is classified as a Grade B violation, pursuant to USSG § 7B1.1(a)(2). A Grade B violation coupled with Criminal History Category VI results in an advisory guideline range of imprisonment of 21 to 27 months if the term of supervised release is revoked.

Pursuant to 18 U.S.C. § 3583(h), another term of supervised release is authorized to follow imprisonment. The statutory maximum term of supervised release that can be re-imposed is 60 months, less any term of imprisonment imposed upon revocation, pursuant to 18 U.S.C. § 3583(b)(1) as to Count 4. The statutory maximum term of supervised release that can be re-imposed is 36 months, less any term of imprisonment imposed upon revocation, pursuant to 18 U.S.C. § 3583(b)(2).

**Standard Conditions**

The following information is provided for consideration with respect to the revocation proceedings in this matter. Pursuant to the Seventh Circuit Court of Appeals decisions in *United States v. Thompson, et al.*, 777 F.3d 368 (7th Cir. 2015), a sentencing judge must give a reason, consistent with the sentencing factors set forth at 18 U.S.C. § 3553(a), for any non-mandatory condition of supervision.

The standard and special conditions of supervised release that were imposed at the time of the amended sentence on November 28, 2017, were reasonably related to the offense of conviction, as well as the personal history and characteristics of Mr. Allen.

The standard conditions of supervision, as set forth in 18 U.S.C. §§ 3563(b) and 3583(d), have been established by policy of the Judicial Conference, as informed by U.S. Sentencing Commission policy statements in §§5B1.3 and 5D1.3. The District Court for the Western District of Wisconsin has adopted some modifications as a result of Seventh Circuit case law. These standard conditions, adopted from 18 U.S.C. §§ 3563(b) and 3583(d) and numbered below, identify the basic requirements, expectations, and limitations for defendants and address corresponding risk-related or recidivism-related factors. The standard conditions provide probation officers with the means to monitor the conduct of defendants who are under court-ordered supervision by matching supervision and programming to factors correlated with risk.

| STANDARD CONDITIONS OF SUPERVISION | JUSTIFICATION |
| --- | --- |

| | | |
|---|---|---|
| 1) | **Defendant shall not knowingly leave the judicial district in which defendant is being supervised without the permission of the Court or probation officer.** | To provide community protection, rehabilitation for defendant, and to enable the supervising probation officer's statutory duty to keep informed of defendant's location, conduct, condition, and compliance.<br>18 U.S.C. § 3553(a)(1), (a)(2)(B) and (C);<br>18 U.S.C. § 3563(b)(14);<br>18 U.S.C. § 3603(2) and (7);<br>USSG §5B1.3(b)(1)(A), (C), (D) and (b)(2);<br>USSG §5D1.3(b)(1)(A), (B), (C) and (b)(2). |
| 2) | **Defendant is to report to the probation office as directed by the Court or probation officer and shall submit a complete written report within the first five days of each month, answer inquiries by the probation officer, and follow the officer's instructions. The monthly report and the answer to inquiries shall be truthful in all respects unless a fully truthful statement would tend to incriminate defendant, in violation of defendant's constitutional rights, in which case defendant has the right to remain silent.** | To provide community protection, rehabilitation for defendant, to ensure officer and defendant safety, and to enable the supervising probation officer's statutory duty to keep informed of defendant's location, conduct, condition, and compliance.<br>18 U.S.C. § 3553(a)(1), (a)(2)(B), (C) and (D);<br>18 U.S.C. § 3563(b)(15) and (17);<br>18 U.S.C. § 3603(2), (3), (4) and (7);<br>USSG §5B1.3(b)(1)(B)(C), (D), (E) and (b)(2);<br>USSG §5D1.3(b)(1)(B), (C), (D) and (b)(2). |
| 3) | **Defendant shall maintain lawful employment, seek lawful employment, or enroll and participate in a course of study or vocational training that will equip defendant for suitable employment, unless excused by the probation officer or the Court.** | Evidence based practice research indicates that lawful, stable employment and education are pro-social activities that reinforce the rehabilitation of defendant. Employment and education have been identified as risk factors for recidivism.<br>18 U.S.C. § 3553(a)(2)(B), (C) and (D);<br>18 U.S.C. § 3563(b)(4) and (5);<br>18 U.S.C. § 3603(2), (3), (4) and (7);<br>USSG §5B1.3(b)(1)(C), (D) and (E);<br>USSG §5D1.3(b)(1)(B), (C) and (D). |
| 4) | **Defendant shall notify the probation officer within seventy-two hours of any change in residence, employer, or any change in job classification.** | To provide community protection, rehabilitation for defendant, to ensure officer and defendant safety, and to enable the supervising probation officer's statutory duty to keep informed of defendant's location, conduct, condition, and compliance.<br>18 U.S.C. § 3553(a)(2)(C);<br>18 U.S.C. § 3563(b)(13), (15), (16) and (19);<br>18 U.S.C. § 3603(2), (3), (4) and (7);<br>USSG §5B1.3(b)(1)(D) and (b)(2);<br>USSG §5D1.3(b)(1)(C). |

| | | |
|---|---|---|
| 5) | Defendant shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician. Defendant shall not use any product containing cannabidiol (CBD) or tetrahydrocannabinol (THC), except as prescribed by a physician. | Evidence based practice research indicates the use of illicit chemicals is a risk factor for recidivism. This condition is recommended to assist with defendant's rehabilitation, officer and defendant safety, and to protect the public. 18 U.S.C. § 3553(a)(1), (a)(2)(A), (B) and (C); 18 U.S.C. § 3563(b)(7); 18 U.S.C. § 3603(3); USSG § 5B1.3(b)(1)(A), (B), (C) and (D); USSG § 5D1.3(b)(1)(A), (B) and (C). |
| 6) | Defendant shall not visit places where defendant knows or has reason to believe controlled substances are illegally sold, used, distributed, or administered. | Evidence based practice research indicates that frequenting places where illicit chemicals are sold, used, distributed or administered increases the risk that defendant will purchase, use or possess illicit chemicals. Individuals involved in the distribution of illicit chemicals present a risk of peer association as identified in the research. This condition supports rehabilitation of defendant and promotes public safety.<br>18 U.S.C. § 3553(a)(1), (a)(2)(B) and (C);<br>18 U.S.C. § 3563(b)(6);<br>18 U.S.C. § 3603(3);<br>USSG §5B1.3(b)(1)(A), (B), (C), (D) and (b)(2);<br>USSG §5D1.3(b)(1)(A), (B) and (C). |
| 7) | Defendant shall not meet, communicate, or spend time with any persons defendant knows to be engaged in criminal activity or planning to engage in criminal activity. | Evidence based practice research indicates that association with peers involved in criminal activity increases the risk of recidivism. This condition promotes and encourages pro-social relationships that are conducive to a law-abiding lifestyle.<br>18 U.S.C. § 3553(a)(1), (a)(2)(A), (B) and (C);<br>18 U.S.C. § 3563(b)(6); 18 U.S.C. § 3603(3);<br>USSG §5B1.3(b)(1)(B), (C) and (D);<br>USSG §5D1.3(b)(1)(B) and (C). |
| 8) | Defendant shall permit a probation officer to visit defendant at home, work, or some other mutually convenient location designated by the probation officer at any reasonable time and shall permit confiscation of any contraband observed in plain view by the probation officer. | Community contacts ensure compliance with court-ordered conditions and assist defendant in maintaining a law-abiding lifestyle.<br>18 U.S.C. § 3553(a)(1), (a)(2)(A), (B), and (C);<br>18 U.S.C. § 3563(b)(13), (15), (16) and (17);<br>18 U.S.C. § 3603(2), (3), (4) and (7);<br>USSG§ 5B1.3(b)(1)(A), (B), (C), (D) and (b)(2);<br>USSG §5D1.3(b)(1)(A), (B), (C) and (b)(2). |
| 9) | Defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer. | To provide for community safety and rehabilitation of defendant.<br>18 U.S.C. § 3553(a)(1), (a)(2)(A), (B) and (C);<br>18 U.S.C. § 3563(b)(18);<br>18 U.S.C. § 3603(2), (3), (4) and (7);<br>USSG § 5B1.3 (b)(1)(A), (B), (C) and (D);<br>USSG § 5D1.3 (b)(1)(A), (B) and (C). |

| | | |
|---|---|---|
| 10) | **Defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the Court.** | Evidence based practice research indicates contact with criminals and potential involvement in facilitating other crimes sanctioned by law enforcement officers directly contradicts the condition of no new offenses and criminal associations, which are risk factors for recidivism. Therefore, strict monitoring by the Court/probation office is necessary for the safety of the community, defendant, and the supervising probation officer.<br>18 U.S.C. § 3553(a)(1), (a)(2)(A), (B) and (C);<br>18 U.S.C. § 3563(b)(5), (6), (15), (17) and (18);<br>18 U.S.C. § 3603(2), (3), (4) and (7);<br>USSG §5B1.3(b)(1)(A), (B), (C) and (D);<br>USSG §5D1.3(b)(1)(A), (B) and (C). |
| 11) | **Defendant shall report to the probation office in the district to which defendant is released within 72 hours of release from the custody of the Bureau of Prisons, unless instructed by a U.S. probation officer to report within a different time frame.** | To review and clarify conditions of supervision imposed by the court at sentencing. To assist with risk and needs assessment, monitoring requirements, release planning, and program referrals. To set goals for supervision. 18 U.S.C. § 5363(b)(15); USSG §§ 5B1.3(c)(1); USSG § 5D1.3(c)(1). |
| 12) | **Defendant shall not possess a firearm, ammunition, destructive device, or dangerous weapon.** | To comply with statutory provisions. To provide for community safety, as well as the safety of the supervising U.S. probation officer.<br>18 U.S.C. §§ 921 and 922; 18 U.S.C. § 5363(b)(10); USSG § 5D1.3(c)(10); and *U.S. v. Armour*, 804 F.3d 859, 869 (7th Cir. 2015). |

## **Special Conditions**

The following special conditions, in addition to the mandatory conditions, would be recommended if an additional term of supervision is deemed appropriate by the Court:

| | SPECIAL CONDITIONS OF SUPERVISION | JUSTIFICATION |
|---|---|---|
| 13) | Provide the supervising U.S. Probation Officer any and all requested financial information, including copies of state and federal tax returns. | To assess the defendant's ability to pay for treatment services, and based on the defendant's obligation to pay mandatory restitution. |
| 14) | Submit person, property, residence, papers, vehicle, or office to a search conducted by a U.S. Probation Officer at a reasonable time and manner, whenever the probation officer has reasonable suspicion of contraband or of the violation of a condition of release relating to substance abuse or illegal activities; failure to submit to a search may be a ground for revocation; defendant shall warn any other residents that the premises defendant is occupying may be subject to | Recommended based on defendant's criminal history, documented substance abuse, new criminal conduct and violations while on supervised release, the need to protect the community, and ensure the safety of the supervising U.S. Probation Officer. |

| | | |
|---|---|---|
| | searches pursuant to this condition. | |
| 15) | Participate in a substance abuse evaluation and recommended treatment. If defendant is eligible for funding from any source to cover the cost of treatment, defendant is to make reasonable efforts to obtain such funding. Participation in treatment does not require payment by defendant unless it is clear defendant can afford it. Defendant shall submit to drug testing beginning within 15 days of defendant's release and 60 drug tests annually thereafter. The probation office may utilize the Administrative Office of the U.S. Courts' phased collection process. | Recommended based on defendant's documented history and substance use while on supervised release. |
| 16) | Abstain from the use of alcohol. | Recommended based on the defendant's documented history and alcohol abuse while on supervised release. |

**Mandatory Conditions - 18 U.S.C. § 3563(a) and 18 U.S.C. § 3583(d)**

- Defendant shall not commit another federal, state, or local crime. [Note: Any defendant that has been convicted of a felony offense, or is a prohibited person, shall not possess a firearm, ammunition, or destructive device pursuant to 18 U.S.C. §§ 921 and 922.]

- Defendant shall not illegally possess a controlled substance. Defendant is subject to drug testing according to 18 U.S.C. §§ 3563(a)(5) and 3583(d).

- Defendant shall cooperate with the collection of DNA by the U.S. Justice Department and/or the U.S. Probation and Pretrial Services Office as required by Public Law 108-405.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 17, 2024

/s/
Alyssa M. Brody
Sr. U.S. Probation Officer

*[Handwritten annotation: CONFIRMED HE REMAINS IN STATE CUSTODY WITH DETAINER FORMALLY LODGED OR ARREST ON WARRANT]*

THE COURT ORDERS:
☒ The issuance of a warrant to be filed as a detainer. THE ORDER IS TO REMAIN UNDER SEAL UNTIL ~~ARREST~~ WITH THE EXCEPTION THAT IT MAY BE DISSEMINATED TO LAW ENFORCEMENT.
☒ The probation office is authorized to release to the parties any police reports or other evidence that the probation office has obtained to support the basis for the alleged violations.
☐ The issuance of a summons.
☒ The appointment of counsel upon arrest if defendant is indigent.
☐ Other:

Honorable William M. Conley
U.S. District Judge

June 17, 2024
Date